493 So.2d 1277 (1986)
Nancy WATSON
v.
Dr. Patrick L. LILLARD and St. Dominic Hospital, Inc.
No. 55810.
Supreme Court of Mississippi.
September 3, 1986.
James J. Fougerousse, Jackson, for appellant.
James A. Becker, Jr., Frank A. Wood, Jr., Watkins & Eager, George Q. Evans, David H. Pennington, Wise, Carter, Child & Caraway, Jackson, for appellees.
Before ROY NOBLE LEE, P.J., and ROBERTSON and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
One who files an action at law assumes an obligation to use all due diligence to see that the action proceeds on its natural course until the matter is resolved, or at least to put no obstacles in the way. The fate of this medical malpractice action, coming before us from the Circuit Court of Hinds County, underscores the need for taking this obligation seriously. We affirm the lower court's judgment.
Nancy Watson appeared at the emergency room of St. Dominic's Hospital on September 12, 1980. She was suffering from seizures or spasms of the facial and arm muscles. She was examined by Dr. Patrick Lillard, who recommended cranial exploratory surgery. Mrs. Watson's complaint alleged that Dr. Lillard told her the operation *1278 would be "extremely simple, very safe and with no chance of serious complications." Mrs. Watson alleged she signed a blank consent form based on these representations.
The surgery was accordingly performed, but with very unfortunate results. According to Mrs. Watson's complaint, she suffered a complete loss of speech and paralysis of one arm. (The hospital's answer admitted the paralysis, but alleged that the only other problem was a difficulty in swallowing.)
On September 15, 1982, Mrs. Watson filed a complaint against Dr. Lillard and St. Dominic's, charging malpractice and fraud. Soon afterwards, the procedural disintegration of this cause began. St. Dominic's answered timely with general denials, thus achieving the distinction of being the only party in this action to do what it was supposed to do at the proper time. Dr. Lillard never filed an answer; his first appearance in the case was almost a year after the filing of the complaint, when his counsel moved to compel discovery or, alternatively, to dismiss. A default judgment against him under Rule 55, Mississippi Rules of Civil Procedure, would have been proper, but none was applied for.
As for Mrs. Watson, she had trouble getting along with her lawyers; they moved on December 6, 1982, that they be given leave to withdraw due to "personal differences" with their client. The court granted the motion and gave Mrs. Watson sixty additional days to secure new counsel. On September 26, 1983  six days after the expiration of the court-imposed deadline  Mrs. Watson moved that the court substitute new counsel in the cause. The court granted this, but required her to answer all interrogatories within 25 days and to set the case for trial before December 6, 1983  the anniversary of the withdrawal of her original counsel.
On November 10, 1983, Mrs. Watson's second team of counsel asked for leave of the court to withdraw, again because of "personal differences" with the client. The motion was granted.
The December 6 deadline came and went with no further action by Mrs. Watson. A week later, both defendants moved to dismiss for failure to prosecute. On January 6, 1984, the judge responded by ordering the dismissal of the action unless the plaintiff set the case for trial no later than February 6. This deadline having also passed without any action by Mrs. Watson, the court entered a final order dismissing the action with prejudice as to both defendants on February 8.
Five days later Mrs. Watson, acting pro se, filed a motion to "reverse the order to dismiss", alleging that she had "tried to find an attorney that is not in any way connected to the hospital." She also gave notice to opposing counsel that she would bring on the motion for hearing on February 20. This being a court holiday, no hearing was held on that day; instead it was held on May 28. In the interim, Mrs. Watson's third (and present) counsel filed an entry of his appearance. On the appointed day, the judge heard arguments from both sides on Mrs. Watson's motion, which he treated as a motion to set aside the order of dismissal. In the end, the court denied the motion, leaving the earlier order of dismissal intact. Mrs. Watson now appeals to this Court.
The power to dismiss for failure to prosecute is inherent in any court of law or equity, being a means necessary to the orderly expedition of justice and the court's control of its own docket. It can be exercised sua sponte where a motion by a party is lacking. Link v. Wabash R.R. Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Where a motion is made, its disposition is governed by Rule 41(b), which is the same under the federal system or our own rules of civil procedure. A substantial body of law has grown up around the federal rule. It does not, of course, bind us as precedent, but it provides useful guidelines for our consideration.
The law favors trial of issues on the merits, and dismissals for want of prosecution are therefore employed reluctantly. Hobson v. Wilson, 737 F.2d 1 (D.C. Cir. *1279 1984). There is no set time limit for the prosecution of an action once it has been filed, but where the record shows that a plaintiff has been guilty of dilatory or contumacious conduct, Applebaum v. Ceres Land Co., 546 F. Supp. 17 (D.Minn. 1981) or has repeatedly disregarded the procedural directives of the court, Ramsay v. Bailey, 531 F.2d 706 (5th Cir.1976) cert. denied 429 U.S. 1107, 97 S.Ct. 1139, 51 L.Ed.2d 559 (1977), such a dismissal is likely to be upheld.
The delay in the present case was immediately caused by the plaintiff's lack of counsel. Appellate courts have seldom been indulgent to plaintiffs in this regard. In California Molasses Co. v. C. Brewer & Co., 479 F.2d 60 (9th Cir.1973), a dismissal was upheld when the plaintiff failed to complete discovery, although the failure was due largely to the necessity for obtaining new counsel. In Murrah v. Fire Ins. Exchange, 480 F.2d 613 (5th Cir.1973), the trial court granted plaintiff's counsel's motion to withdraw. When the plaintiff failed to secure counsel to appear for him at the subsequent pretrial conference, or give an adequate explanation for the default, the trial judge dismissed. On appeal, the Fifth Circuit held the dismissal within his discretion. In one New York case, the plaintiff fired his counsel and kept the court "in turmoil" for several months afterwards by ignoring its orders; the judge dismissed. Silver v. Mohasco Corp. 103 F.R.D. 614, 617 (N.D.N.Y. 1984).
Courts commonly regard it as an "aggravating circumstance" if the delay stems from the conduct of the plaintiff himself, as distinct from his lawyer. Ford v. Sharp, 758 F.2d 1018, 1021 (5th Cir.1985).
In the present case, Mrs. Watson's actions contributed materially to the delay. Her "personal differences" appear to have driven off two different sets of competent counsel and she repeatedly missed deadlines set by the trial judge. It seems to us that under these circumstances, the trial judge did not abuse his discretion in resorting to the extraordinary remedy of dismissal for failure to prosecute.
Appellant's brief argues that Mrs. Watson's inability to secure and keep appropriate counsel was due to the disabilities resulting from her operation. It is also alleged that she received verbal assurances from the clerk's office that her cause would be reinstated after the filing of her motion to set aside the dismissal. There is nothing in the record to support either assertion. Once again, we are constrained to observe that on appeal, this Court may take notice only of matters contained in the record. Watson v. State, 483 So.2d 1326 (Miss. 1986); Shelton v. Kindred, 279 So.2d 642 (Miss. 1973); Willenbrock v. Brown, 239 So.2d 922 (Miss. 1970).
In any event, at the hearing on Mrs. Watson's final motion, the judge heard arguments from her present counsel as to why the dismissal should be set aside. This was the time for counsel to make his record concerning arguments about Mrs. Watson's health and other matters. He failed to do so.
That this Court will not disturb a trial judge's finding on appeal unless it is manifestly wrong is a doctrine too well known to require citation. Moreover, in a case like the present one, where the trial judge did not make specific findings of fact with regard to controverted issues, this Court will assume that the trial judge made all findings of fact that were necessary to support his verdict. Rives v. Peterson, 493 So.2d 316 (Miss. 1986); Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983); Culbreath v. Johnson, 427 So.2d 705, 707-708 (Miss. 1983).
In the context of the case sub judice, this means that on appeal this Court must presume that the trial judge found that Mrs. Watson's failure to prosecute the action could not be attributed to her disabilities. Since counsel for Mrs. Watson failed to make any record of the evidence presented at the hearing, this Court has no basis for finding that the trial judge was wrong. If anything, the rule should apply with an even greater force in this fact setting; this Court is loath to presume that any Mississippi trial judge would allow a serious action *1280 to be lost because of delays attributable solely to plaintiff's illness or infirmity.
In short, the trial judge did not abuse his discretion, and his order of dismissal must be affirmed.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P. JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and GRIFFIN, JJ., concur.